758 F.Supp. 1301 (1991)
Patricia P. ROACH, Plaintiff,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.
No. S89-0133C.
United States District Court, E.D. Missouri, Southeastern Division.
January 14, 1991.
*1302 Anthony W. Bartels, Jonesboro, Ark., for plaintiff.
Eric Tolen, Asst. U.S. Atty., St. Louis, Mo., for defendant.

ORDER
LIMBAUGH, District Judge.
IT IS HEREBY ORDERED that the review and recommendation of United States Magistrate Catherine D. Perry is SUSTAINED, ADOPTED and INCORPORATED herein.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is *1303 GRANTED, and plaintiff's motion for summary judgment is DENIED.
IT IS FINALLY ORDERED, ADJUDGED and DECREED that judgment is hereby entered in favor of defendant and against plaintiff in this cause of action.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
CATHERINE D. PERRY, United States Magistrate Judge.
This is an action under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Both parties have moved for summary judgment and the cause was referred to the undersigned United States Magistrate pursuant to 28 U.S.C. § 636(b).

Procedural History
On October 30, 1987, plaintiff filed an application for disability insurance benefits pursuant to 42 U.S.C. § 401 et seq., alleging that she had been disabled since October 16, 1987, by reason of hearing loss in the left ear, a back injury, emphysema, osteoporosis, lupus, and a liver injury. (Tr. 60-63). The plaintiff's application was denied initially and upon reconsideration. (Tr. 39-49, 53-59). Plaintiff requested a hearing which was held before Administrative Law Judge ("ALJ") F. Waley Abels on January 10, 1989. (Tr. 17-37). The ALJ determined that plaintiff was not under a disability as defined by the Social Security Act (Tr. 7-12). The Appeals Council denied plaintiff's request for review. (Tr. 2-3). Thus, the decision of the ALJ stands as the final decision of the Secretary.

Evidence Before the Administrative Law Judge
At the hearing plaintiff testified that she was forty-seven years old and that she had completed the eighth grade. She stated that she is married with a nineteen year old son still at home. Plaintiff testified that she is five feet, five inches tall and her weight was one hundred sixteen pounds, but that her normal weight is one hundred twenty pounds. (Tr. 21-22).
Plaintiff testified that she last worked in October of 1987. She stated that she stopped working as a school cook when she was injured from a fall at work, and as a result of the accident her spine was bent. (Tr. 23).
With respect to her exertional capacities, plaintiff testified that she can walk for about an hour before having pain. She testified that she cannot bend or stoop without having pain. She also stated that she is unable to lift objects that are over two to three pounds in weight. (Tr. 27-28). Plaintiff testified that she can stand for about one hour without pain. She also stated that she can sit for about two hours with the aid of heating pads for the pain. (Tr. 29). She testified that when the pain is severe she lies down to relieve the pressure. (Tr. 29).
Plaintiff testified that her daughter helps with many of the household chores and shopping. She testified that she cooks supper and throws the sheets back on the beds. (Tr. 29-31). She also stated that she goes shopping with her daughter once a week and visits her mother once a week for about three to four hours. (Tr. 30). Plaintiff also testified that she drives three to four times a week. (Tr. 22). Finally, plaintiff testified that she spends her day watching television, taking naps, and walking around the house. (Tr. 31).
The medical records reveal that in June of 1985, plaintiff was admitted by Dr. Marvin R. Barbour to Doctors Regional Medical Center in Poplar Bluff, Missouri, complaining of abdominal and epigastric pain and intolerance for food. The admitting records noted that plaintiff had a past history of some arthritis for which she was being treated. Plaintiff was diagnosed as suffering from a prolapsed uterus, cystocele, recurrent cystitis, and an atonic bladder. On June 25, 1985, Dr. A.D. Madduri performed a vaginal hysterectomy to correct these problems. (Tr. 112-124).
On March 20, 1987, Dr. Barbour referred plaintiff to Randy D. Roberts, M.D., a rheumatologist, for an evaluation. Dr. *1304 Roberts noted that plaintiff complained of pain and swelling of her knees, ankles, hips, buttocks, thighs, neck, shoulders, elbows, jaws, and some tenderness in the front of her chest. She also complained that her hands had been swollen and painful, and that her grip had steadily decreased. Several screens completed revealed that her chemistry profile was normal, rheumatoid factor was negative, and a sed rate of six was found to be normal. Plaintiff's ANA was positive at 1:80 nuclear pattern. Dr. Roberts concluded that plaintiff had some form of connective tissue disease, which clinically appeared to be rheumatoid arthritis, but he did not rule out systemic lupus, crythematasis, connective tissue disease or some form of overlap syndrome. Plaintiff was placed on Prednisone and Amitriptyline for muscular pain, possibly fibromyalgias. By April 9, 1987 Dr. Roberts reported improvement in plaintiff's symptoms with this medication. (Tr. 184-194).
On April 29, 1987, Dr. Roberts admitted plaintiff to Saint Bernards Regional Medical Center in Jonesboro, Arkansas. Plaintiff complained of pain and swelling of her knees, hips, buttocks, thighs, neck, shoulders, elbows, jaws, and tenderness in the front of her chest. She also complained of swelling of her hands, and numbness in both her hands and feet. Plaintiff related a history of dyspnea which was getting worse, and dysphasia, as well as bloody stools, and a history of thyroid disease for which she was prescribed Thyroxin. X-rays ordered showed no specific changes except for osteoarthritis of a mild degree in her spine and hands and changes in her feet which could be attributed to an early change in inflammatory arthritis. An examination of plaintiff revealed osteoporosis, trauma to her head with a tender area on the LT skull, LT cholesteatoma of her ear, cholecystectomy, appendectomy and bladder surgery. A consultation examination by W.S. Hubbard, M.D., was basically negative. Plaintiff's discharge diagnosis was polyarthritis, unknown type, dysphasia, dyspnea, and a history of melena and bright red blood per rectum. (Tr. 125-148).
After her discharge from the hospital, Dr. Roberts again saw plaintiff on a return visit on May 19, 1987. Dr. Roberts found that plaintiff was doing well with Amitriptyline and Prednisone. Dr. Roberts also noted that plaintiff's continued discomfort was significantly due to fibromyalgias although there was some degree of polyarthritis. He finally noted that plaintiff was not convinced of her progress and that underlying social factors may be influencing her mental state. (Tr. 182).
During her hospitalization plaintiff was seen by John B. Jui, M.D. (Tr. 127). On May 19, 1987 Dr. Jui reported that plaintiff was suffering from a significant hearing loss on the left side after what appeared to be a cholesteatoma type surgery, and significant problems with swelling primarily due to postnasal drainage. A hearing exam revealed that plaintiff did have a conductive loss consistent with ossicular discontinuity and the possibility of sinus surgery to correct the problem was discussed with plaintiff. (Tr. 183).
On August 10, 1987, plaintiff was admitted at Doctors Regional Medical Center. Plaintiff complained of abdominal pain of upper and lower abdomen with some nausea but no vomiting. She stated that she had been taking Tagamet, Carafate, and at times some Pepsin, without significant improvement. Plaintiff was subjected to diagnostic studies which revealed no positive findings. Plaintiff was discharged on August 14, 1987 with a diagnosis of peptic disease. (Tr. 103-111).
In October of 1987, plaintiff was seen by A.D. Brookreson, M.D., after falling at work on October 16, 1987. This is the incident which plaintiff asserts as the onset of her disability. Dr. Brookreson's findings were that plaintiff was suffering from a cervical strain and a dorsal strain. He ordered a series of laboratory screens, which were all within normal range. (Tr. 167-174).
On November 25, 1987, plaintiff was examined by Gilbert D. Smith, M.D., for a consultative evaluation. Dr. Smith noted plaintiff's complaints of joint achiness sustained for a period of over six years, for *1305 which she was prescribed Naprosyn. Dr. Smith also noted plaintiff's admission at Saint Bernards Medical Center, and that plaintiff stated she was diagnosed as having "lupus" for which she was taking Prednisone. She described her joint achiness as pain involving the hips, knees and feet. Dr. Smith also noted that plaintiff related an accident at work where she fell off a cabinet landing on her right side and hitting her head on a table. Plaintiff stated that she was bruised on her right hip, ankle and knee, and suffered a strained back. Plaintiff also complained of having a weakened bladder since her accident, and a history of emphysema. She complained of shortness of breath when walking too fast or for prolonged periods. Dr. Smith's examination revealed a history of a perforated eardrum with chronic mastoiditis treated by surgery, mild Heberden's nodes on fingers, a mild limp, and favoring of the left hip upon walking. Dr. Smith's findings were that plaintiff suffered from mild degenerative joint disease of the hands, status-post bony trauma of the left elbow, currently with full range of motion, arthralgia of unknown significance, mastoidectomy and left tympanic membrane repair, recent alleged fall without evidence of current bruising, with evidence of mild limp upon walking, history of hypothyroidism, fibrocystic disease of the breast, post-vaginal hysterectomy, status-post cholecystectomy, status-post right leg vein stripping, urinary frequency of undermined significance, emphysema without physical evidence on examination, chronic corticosteroid use, family history of diabetes, and family history of heart disease. Dr. Smith noted that although plaintiff alleged a history of lupus erythematosis, no other stigmata of the disease, skin lesions, dysphagia, or kidney involvement was evident. (Tr. 176-180).
On December 14, 1987, plaintiff again saw Dr. Brookreson for the back strain, who prescribed Trilisate, Halcion and Flexeril. (Tr. 166). He ordered physical therapy which plaintiff underwent at Lucy Lee Hospital. Records indicated no marked improvement of her back pain. (Tr. 102). Dr. Brookreson also ordered x-rays of plaintiff's cervical and thoracic spine, which showed no fracture. The x-ray report noted that degenerative changes with osteoporosis of the thoracic spine, and degenerative changes in the lumbar spine, sacrum and coccyx were present. (Tr. 174).
On February 10, 1988, plaintiff was seen by Gordon W. Eller, M.D., a specialist in orthopedic surgery. Dr. Eller noted that plaintiff complained of back pain, pain in the right knee, pain in both ankles, and some pain in the hip area. Dr. Eller observed that plaintiff appeared to have osteoarthritis in both hands, and that plaintiff stated she had been in of pain all the time, even before her accident. Dr. Eller's physical examination revealed that patient's reflexes were normal in both lower extremities, there was tenderness in the ankles although not a great deal of effusion, tenderness in the back, especially in paraspinus musculature, tenderness over the right hip but no evidence of a knot or bruise, and tenderness over the right greater trochanter. Dr. Eller's review of plaintiff's prior x-rays revealed only mild degenerative changes. Dr. Eller's referred plaintiff to Dr. Taylor for evaluation of lupus, because of plaintiff's unconfirmed history of diagnosis for that disease. He noted that plaintiff's return to work depended on her achieving satisfactory relief from her discomfort. Dr. Eller's impressions were that plaintiff was suffering from arthritis, back sprain, and a contusion to the right hip area which should gradually improve. Dr. Eller prescribed Darvocet for relief of pain, and Amitriptyline to help plaintiff sleep. Dr. Eller noted some depression associated with plaintiff's medical problems. (Tr. 162).
On February 16, 1988, plaintiff was seen by Phillip W. Taylor, M.D., a specialist in rheumatology and internal medicine. Dr. Taylor's findings were that plaintiff did not demonstrate any evidence of systemic lupus erythematosus. He did note that symptoms could be suppressed by plaintiff's treatment with Prednisone. Dr. Taylor also found that plaintiff had primary fibrositis syndrome explaining her history of joint pain in the absence of any physical *1306 findings. Dr. Taylor reduced plaintiff's Prednisone dosage, referred her to physical therapy for back pain, prescribed Elavil for sleep disturbance and joint muscle pains, and increased Trilasate dosage. (Tr. 152-60).
In March of 1988, A.D. Brookreson, M.D., prescribed Elavil for plaintiff's complaints of back pain and headaches. (Tr. 199). In June of 1988, Dr. Brookreson prescribed Tylox for plaintiff's complaints of weakness and dizziness. (Tr. 203).
On November 22, 1988, plaintiff was seen by Donald Piland, M.D. Plaintiff complained of dyspliagia, abnormal UGI, and chest pain. Dr. Piland performed a gastrointestinal endoscopy which revealed that plaintiff was suffering from a hemorrhagic gastritis and a minimal esophagal reflux. (Tr. 207).
The ALJ's findings determined that plaintiff met the disability insured status requirements of the Social Security Act on October 16, 1987, the date the plaintiff stated she became disabled, and continued to meet them at least through February 22, 1989. The ALJ noted that plaintiff had not engaged in substantial gainful activity since October of 1987. The ALJ found that the medical evidence established that plaintiff has degenerative disease with multiple arthralgia, fibrocystic disease of the breast, urinary frequency, hemorrhagic gastritis, and an esophageal reflux, but that she did not suffer from an impairment or a combination of impairments that meet or equal the Listing of Impairments. The ALJ also discredited plaintiff's complaints of totally disabling pain, weakness, decreased grip strength, falling, and shortness of breath. The ALJ found that plaintiff's allegations were not supported by the medical or other evidence as fully set forth in the evaluation. The ALJ noted that plaintiff could not perform work involving prolonged standing and walking. The ALJ also noted that plaintiff is unable to perform her past work as a school cook. Therefore, the ALJ shifted the burden to the Secretary to show that there were other jobs existing in significant numbers in the national economy which plaintiff could perform. The ALJ found that plaintiff has the residual functional capacity to perform the full range of sedentary work. Applying Rules 201.18, 201.19, and 201.20 of the Medical-Vocational Guidelines, the ALJ concluded that plaintiff, considering her residual functional capacity, age, education, and work experience, was not disabled. (Tr. 11-12).

Discussion
The Secretary's decision is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence a reasonable person might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Secretary's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:
(1) the credibility findings made by the Administrative Law Judge;
(2) the plaintiff's vocational factors;
(3) the medical evidence from treating and consulting physicians;
(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;
(5) any corroboration by third parties of the plaintiff's impairments; and
(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.
Taylor v. Bowen, 805 F.2d 329 (8th Cir. 1986); McMillian v. Schweiker, 697 F.2d 215 (8th Cir.1983); Brand v. Secretary of Dept. of Health, Education & Welfare, 623 F.2d 523 (8th Cir.1980).
The Social Security Act defines disability as the inability to engage in substantial gainful activity due to a medically determinable impairment which can be expected to last for a continuous period of at least twelve (12) months or result in death. 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), and 1382c(a)(3)(A); 20 C.F.R. §§ 416.905, 416.908, and 416.909. The plaintiff has the burden of proving that she has a disabling impairment. Russell v. Secretary of Dept. *1307 of Health, Education & Welfare, 402 F.Supp. 613 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir.1976).
If the plaintiff demonstrates that she has an impairment or combination of impairments that meets or equals the Listing of Impairments which is contained in 20 C.F.R., Subpart P, Appendix 1, and she is not engaging in substantial gainful activity, the Secretary must find that she is disabled per se. 20 C.F.R. 404.1520. If, however, the plaintiff demonstrates that she has an impairment or combination of impairments that are severe (yet not per se disabling), and which preclude her from performing her past work, the burden shifts to the Secretary to show some other type of work that one with the plaintiff's impairment(s) is capable of performing. Dover v. Bowen, 784 F.2d 335 (8th Cir. 1986); Nunn v. Heckler, 732 F.2d 645 (8th Cir.1984).
The Secretary may apply the Medical-Vocational Guidelines contained in 20 C.F.R., Subpart P, Appendix 2, to meet his burden if no non-exertional limitations exist. McCoy v. Schweiker, 683 F.2d 1138 (8th Cir.1982). However, when significant non-exertional limitations exist, the ALJ must call a vocational expert to testify to the existence of jobs that one with the plaintiff's impairment(s) is capable of performing. Tucker v. Schweiker, 689 F.2d 777 (8th Cir.1982).
Pain alone may be disabling within the meaning of the Social Security Act if it is met by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to cause pain. Polaski v. Heckler, 739 F.2d 1320, supplemented, 751 F.2d 943 (8th Cir.1984), vacated, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), adhered to on remand, 804 F.2d 456 (8th Cir.1986), cert. denied, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). When evaluating evidence of pain, the Secretary must consider:
(1) the objective medical evidence;
(2) the subjective evidence of pain;
(3) any precipitating or aggravating factors;
(4) the claimant's daily activities;
(5) the effects of any medication; and
(6) the claimant's functional restrictions.
Plaintiff challenges the ALJ's credibility determination with respect to her subjective complaints of pain and limitations. Plaintiff also challenges the ALJ's application of the medical-vocational guidelines in finding her not disabled.
The undersigned finds no error in the manner in which the ALJ discredited plaintiff's subjective complaints and the ALJ's application of the medical-vocational guidelines to find plaintiff not disabled. In evaluating evidence of pain, the ALJ is not free to ignore the testimony of the plaintiff that is uncontradicted or uncorroborated by the medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir.1984); Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Millbrook v. Heckler, 780 F.2d 1371 (8th Cir.1985). Further, in assessing subjective allegations, the ALJ may consider the frequency and type of medication or treatment, daily activities and the claimant's appearance and demeanor at the hearing. Cruse v. Bowen, 867 F.2d 1183 (8th Cir.1989); Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir.1984).
The medical evidence indicates that plaintiff has a degenerative disease with multiple arthralgia, fibrocystic disease of the breast, urinary frequency, hemorrhagic gastritis, and an esophageal reflux. While it is undisputed that plaintiff has suffered from these multiple conditions, none of the numerous medical reports in the record show that plaintiff's conditions prevent her from working. The lack of objective evidence in support of a plaintiff's degree of severity of alleged pain is a factor to be considered. Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir.1989). Plaintiff's range of motion and grip strength tests were within normal limits. (Tr. 125-26, 177). Moreover, in February of 1988, Dr. Eller found that plaintiff's x-rays showed only a mild degenerative disc disease. (Tr. 162). *1308 Plaintiff's laboratory tests and bone scans were all within normal limits. (Tr. 137, 152). Dr. Taylor and Dr. Eller found no evidence to suspect that plaintiff suffered from lupus as she reported. (Tr. 153, 162).
However, the ALJ did note in his findings that plaintiff's subjective complaints could not be disregarded because they were not fully corroborated by the medical evidence. The ALJ evaluated plaintiff's subjective complaints of pain applying the guidelines set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). (Tr. 10). In applying the Polaski guidelines, the ALJ found that plaintiff's description of her daily activities was not consistent with her claims of pain. Long v. Bowen, 866 F.2d 1066, 1067 (8th Cir.1989); Sykes v. Bowen, 854 F.2d 284, 286 (8th Cir.1988); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir.1987). Plaintiff testified that she cooked supper, made beds, shopped, drove her car, and visited for long periods of time. (Tr. 22, 30-32).
Moreover, the ALJ found discrepancies in plaintiff's testimony and the medical evidence presented. Plaintiff stated to Dr. Smith that she only suffered from "a little bit" of emphysema. (Tr. 176). The ALJ noted that plaintiff's allegations contrasted with her testimony where she stated that her emphysema kept her from working where chemicals were present. (Tr. 27). The ALJ also found that plaintiff's complaints to Dr. Smith of pain to her hips, knees, and feet were inconsistent with her testimony where she complained of other ailments such as emphysema and heart problems. (Tr. 34-36). Additionally, the ALJ found that plaintiff emphasized her medication intolerance in her testimony, but no mention was made of this condition in her application for benefits. (Tr. 60-63). If inconsistencies are present in the evidence as a whole, the ALJ may discredit subjective complaints. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir.1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir.1989); Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir.1986); Hardin v. Heckler, 795 F.2d 674, 676 (8th Cir.1986).
In applying the medical-vocational guidelines to find plaintiff disabled, the ALJ concluded that plaintiff's testimony regarding non-exertional limitations was not credible, and determined that plaintiff had an unrestricted ability to perform sedentary work. The application of the medical-vocational guidelines is appropriate if the ALJ discredits a plaintiff's subjective complaints of pain for a legally sufficient reason. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir.1990); Hutsell, 892 F.2d at 750; Bolton, 814 F.2d at 538.
Therefore, the record reflects a number of inconsistencies that substantially support the ALJ's findings that plaintiff was not credible in her subjective complaints of pain and limitations. Moreover, the ALJ did not err in applying the medical-vocational guidelines finding plaintiff not disabled, once the ALJ found plaintiff's testimony regarding her non-exertional limitations not credible. Thus, the Secretary's decision in this case should be upheld.

RECOMMENDATION
IT IS HEREBY RECOMMENDED that the defendant's motion for summary judgment be granted and that plaintiff's motion for summary judgment be denied.
The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).
Dated this 29th day of November, 1990.