Nadine BENSKIN, Appellee,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Appellant.

No. 86–2360.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1987.

Decided Oct. 5, 1987.

Rehearing Denied Nov. 4, 1987.

Yvonne M. Ernzen, Kansas City, Mo., for appellant.

Timothy C. Harlan, Columbia, Mo., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

ARNOLD, Circuit Judge.

This is a social-security disability case in which the Secretary appeals the District Court's reversal of the Secretary's decision denying benefits. The issue before us is one that has vexed the courts and the Secretary for some time and in many cases: whether the Secretary's finding that the claimant is not disabled is supported by substantial evidence, when the claimant alleges that she suffers disabling pain. The ALJ (whose opinion was substantially adopted by the Appeals Council, and therefore states the Secretary's rationale), applying the standards we have set out, see *Polaski v. Heckler,* 739 F.2d 1320 (order), *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* — U.S. ——, 106 S.Ct. 2885, 90 L.Ed.2d 974 *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987), found Mrs. Benskin's complaints of disabling pain inconsistent with the evidence as a whole, and discounted them. On appeal, the District Court held that the

---

* The Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

Secretary did not properly evaluate the allegations and thus reversed the denial of benefits. It also held that claimant had demonstrated her entitlement to benefits, so it remanded to the Secretary with instructions to calculate the appropriate award.

We reverse the District Court. In our view, the Secretary properly evaluated Mrs. Benskin's accounts of pain, and his decision denying benefits is supported by substantial evidence.

## I.

Mrs. Benskin was 56 years old at the time of the hearing, has a twelfth-grade education, and has worked as a junior accountant, personnel clerk, and cashier. She has had two operations on her back: the first, in April 1980, was to cut out a herniated disk, and the second, in September 1982, was to remove the posterior arch between two of her lumbar vertebrae and fuse the vertebrae together. After her second surgery, she saw her treating physician, Lynn O. Litton, M.D., twice, once in November 1982 and once in January 1983. Litton noted at the time of the January 1983 visit:

> Patient is better. She is not having much pain. Still soreness in her back. Today her back looks good. SLR [straight leg raising] is negative. X-RAYS show the fusion mass to be in good position. She is to stay in her back support. Certainly not ready to return to any activity.

Record (R.) at 95. She has not seen Litton since that visit.

After Mrs. Benskin filed her claim for benefits, the State Agency referred her to a consulting physician, J.D. Morris, D.O., for an examination on November 29, 1984. Morris reported that she had mild muscle spasms in the lower back and restricted flexion in the lower spine. Mrs. Benskin told him it was painful to bend forward more than 40 to 45 degrees. Morris concluded that she had "Chronic low back pain, 2) Status post lumbar spine surgery times two, 3) Left S1 radiculopathy [a disease of the roots of the spinal nerves], probably old, or chronic." R. 98.

At the hearing, Mrs. Benskin stated that she had to quit her last full-time job in February 1982 because of back problems. (The record, however, shows that she worked four days a week from June through September 1982 as a personnel clerk. R. 66.) She described the pain as sometimes "a jabbing pain, sometimes just a solid pain, an ache or pain. Other times it's spasms." R. 28. She feels it in her lower back and right leg, and occasionally in both legs. Standing for an hour aggravates the pain. She has to sit on the edge of a straight-backed chair or have one leg under her in order to take the pressure off her back while sitting. She takes Advil in the morning and evening, and an aspirin in the afternoon. In the morning she gets up at seven, cooks breakfast, waters and trims 20 hanging plants, and walks about two blocks. Then she lies down in the fetal position for about an hour and a half because of back spasms. When she gets up she fixes lunch, tries to walk some more, and embroiders. She lies down again for about two and one-half hours in the afternoon.

According to the claimant's testimony, her hips are so sore she can barely touch them. She drives once or twice a month to the grocery store, which is 12 miles from her home, to go shopping. Sitting in a car does not bother her, but she gets tense driving. She can dress herself except for putting on socks. Her husband does all of the housework except for washing dishes and dusting, which she does. She goes to bed at 9:30 or 10:00 and sleeps soundly. She cannot lift more than eight pounds off the floor, but she can carry eight to ten pounds from a countertop to the refrigerator.

The ALJ was concerned that, at the time of the hearing, Mrs. Benskin had not seen a doctor in about three years. Earlier she had explained, "I didn't have the money. It took me almost two years to get [the doctor] paid off from the surgery and every time I'd go see him, it was another $80.

I couldn't afford it." R. 28. The ALJ asked:

Q: And [the pain is] not getting any better.

A: No.

Q: Don't you think seeing a doctor would make it any better.

A: I've had oodles and oodles of therapy between these operations.

Q: That's what I was getting at. Are you taking any physical therapy now?

A: No.

Q: Or have you in the last 6 months; whirlpool treatments or heat treatments?

A: I get in the shower about twice a day and let that hot water run on me, that's—

Q: Well, has the doctor ever prescribed any exercises for you?

A: No.

\* \* \* \* \* \*

Q: Did he ever prescribe any type of back brace for you?

A: I wore a brace for about 6 months [after the second operation].

\* \* \* \* \* \*

Q: Have you ever thought about going back and getting a prescription for some better type brace?

A: No.

Q: Has anyone ever prescribed anything to help you; for instance, you say you can't sit in the back of the chair. Have they ever prescribed a gadget such as I have here for bad back?

A: I had two pillows, I sat on one and put the other to my back.

Q: How about riding in a car; how do you do that?

A: It's not very much bothering [to] me, I just get all tense.

Q: You said something about muscle spasms; have you called your doctor on the phone about some medication for these spasms that you have?

A: Well, I was on that for a while—

Q: Like that'd help you to just call him on the phone and ask for some suggestions, you know, as to a different type back brace for muscle spasm, or something like that. Obviously, you're still in a lot of pain, aren't you?

A: Yes sir.

R. 34–35.

After the ALJ had made his decision, Mrs. Benskin was examined by her surgeon, Garth S. Russell, M.D., and his report was made part of the record during her administrative appeal. Russell's letter stated that her condition was improved after the second surgery, but she continued to have substantial symptoms of pain. He concluded:

This is a 55–year-old lady with a history of advanced degenerative disease of her back. This has required two surgical procedures with a fusion of two segments in her back. Her acute severe pain is gone, but she continues with generalized pain and stiffness in her back. ... [I]n my medical opinion, this patient would have difficulty pursuing any gainful employment inasmuch as she will have difficulty in standing or sitting for any period of time sufficient to pursue such duties.

R. 9–10.

## II.

The ALJ found that Mrs. Benskin suffered a severe impairment because of the residual effects of her operations, but that it was not severe enough to prevent her from engaging in her past relevant work. He then considered her complaints of disabling pain:

Subjective complaints must be considered within the standards of the recent ... *Polaski* decision. Although the claimant alleges that she has been totally disabled since September, 1982, she has not been under the care of any ... physician since January, 1983. At that time, the progress notes indicate that she was having very minimal pain. She is not undergoing any active exercise or physical therapy program. She has not been admitted to a pain clinic. She is not taking any prescription medications. Dr. Morris did not describe her as suffering from any significant distress during the exami-

nation. During the hearing she did not appear to be experiencing any pain or discomfort. Her facial expressions were not that of an individual suffering significant pain or discomfort. She was able to appropriately respond to all questions propounded to her. Thus, although the claimant has a history of back surgery in 1980 followed by her procedure in September, 1982, her complaints of pain to preclude sedentary work activities are not credible. Not all pain reaches a level [at] which it is disabling. The claimant's level of care is not consistent with an individual who alleges the severity of her complaints. The claimant is precluded from prolonged walking, standing, or lifting in excess of 10 pounds. However, she retains the capacity to perform the full range of sedentary work including her past work as junior accountant and cashier.

R. 17–18.

The District Court ruled that the ALJ had improperly discounted Mrs. Benskin's complaints because, in its review of the record in light of *Polaski*, the following nine "undisputed facts" were apparent:

(1) [T]he objective medical evidence conclusively established the existence of chronic back problems which twice required surgical intervention;

(2) the claimant's prior work record was good;

(3) plaintiff's treating physicians noted that she experienced stiffness and soreness in her back, and the consultative examiner did not remark on plaintiff's appearance one way or the other;

(4) the claimant's limited daily activities, particularly her need to lie down for extended periods in the morning and afternoon, are fully consistent with her complaints of pain;

(5) the evidence concerning the duration, frequency, and intensity of plaintiff's pain was inconsistent with the ALJ's finding that plaintiff could still perform sedentary work;

(6) the evidence concerning precipitating and aggravating stimuli was fully consistent with the objective medical evidence;

(7) although plaintiff has not made extensive efforts to relieve her pain, other than limiting her physical activity, taking hot showers, and taking Advil regularly, she testified that she was unable to take other measures because of a lack of financial resources;

(8) the objective medical evidence confirmed that plaintiff's range of motion was severely limited; and

(9) the ALJ noted at the hearing that plaintiff "obviously" was "still in a lot of pain."

*Benskin v. Bowen*, No. 85–4540–CV–C–5, slip op. at 7–8 (W.D.Mo. July 17, 1986).

### III.

■ We cannot accept the District Court's reasons for reversing the Secretary. The questions for federal courts to consider in this kind of case are (1) whether, according to *Polaski*, the Secretary considered all of the evidence relevant to claimant's complaints of pain, and (2) whether that evidence contradicted her account, so that the Secretary could discount her testimony for lack of credibility. To explain our disagreement with the District Court, we must go through each of its nine reasons for reversal. In doing so, we are governed by the general principle that questions of fact, including the credibility of a claimant's subjective testimony, are primarily for the Secretary to decide, not the courts.

■ 1. The fact that medical evidence showed the existence of chronic back problems does not go to the issue of claimant's credibility. The ALJ took it as established that claimant had a medical impairment, but found it not so severe as to be disabling. This left the issue of whether claimant's description of her pain should be believed. The fact of her medical impairment is not inconsistent with her account, but neither is it the kind of evidence that makes her claim of the severity of her pain more believable. The impairment, objectively considered, is not obviously so seri-

ous as to lend credence to claimant's subjective complaints.

■ 2. Whether claimant's prior work record is good is a matter that the Secretary disputes—it is certainly not "undisputed." Mrs. Benskin worked from 1960 to 1976 at one job, and then did not work again until 1978, when she worked for less than a year as a cashier. She worked for six weeks in 1979 in the purchasing department of the University of Missouri, and then worked from December 1979 through February 1982 as a junior accountant. After she left that job, she worked from June 1982 until (apparently) her alleged disability-onset date, September 10, 1982, as a personnel clerk four days a week. See R. 27, 66.

Whether this is a good work record, and thus supports Mrs. Benskin's credibility, is a question for the Secretary to consider under *Polaski*. The ALJ's opinion did not do so in detail, but this does not entitle the District Court to undertake this consideration for itself—to engage in fact-finding in a social-security case is not within the province of a federal court. An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case. Our feeling that this error, if there was one, is not significant is bolstered by the fact that claimant's brief in this Court does not argue that the ALJ's finding should be reversed because his opinion did not adequately discuss the claimant's work history.

■ 3. Contrary to the District Court's assertion, the consulting physician noted in November 1984 that claimant "was in no significant distress." R. 97. Her treating physicians did note that she has a "stiff and sore" back: Litton stated in January 1983 that she still had "soreness in her back," R. 95, and Russell said in August 1985 that "she continues with generalized pain and stiffness in her back." R. 9. But the question is not whether Mrs. Benskin suffers any pain; it is whether she is fully credible when she claims that her back hurts so much that it prevents her from engaging in her prior work. These statements are consistent only with the fact of pain, not with any particular level of pain.

■ 4. Mrs. Benskin's daily activities are consistent with her account of her pain to a certain degree. Certainly that she takes Advil and aspirin and must lie in the fetal position for four hours a day is consistent with her account of disabling pain. (We note, however, that the ALJ did not have to believe every detail of the claimant's version of her daily activities.) But that she sleeps soundly, washes dishes, dusts, cares for hanging plants, cooks breakfast and lunch, drives and shops occasionally, and walks two blocks every morning could be seen as inconsistent with her account. These activities are similar to the activities required for sedentary work. See 20 C.F.R. § 404.1567(a). It would not be irrational for the Secretary to consider these daily activities inconsistent with her claim of constant, disabling pain.

■ 5. Whether the evidence of the duration, frequency, and intensity of claimant's pain is inconsistent with the determination that she can do sedentary work simply begs the question. No one doubts that Mrs. Benskin has some pain. The question is how severe her pain is. The only evidence that the pain is disabling comes from the claimant's testimony, and that requires a determination of her credibility. The Secretary's finding that she can perform sedentary work is a conclusion derived only after discounting the claimant's credibility. The question for the courts is whether it was proper to discount claimant's credibility, not whether the ultimate determination is inconsistent with the claimant's account. (A conclusion denying benefits will of course always be inconsistent with a claimant's allegation of disabling pain.)

6. The question is not whether the evidence of precipitating and aggravating stimuli is consistent with the medical evidence; it is, instead, whether the evidence of such stimuli is consistent with the claimant's account of pain. The precipitating factors for her pain appear to be general-

ized osteoporosis (softening of the bone), R. 10, and the residual effects of her surgery. These are consistent with the fact of some pain, but not any particular level of pain. The aggravating factors for her pain are standing for more than one hour at a time, R. 29, and bending her back more than 40 to 45 degrees, R. 9, 98. Mrs. Benskin's Vocational Report shows that two of her four former jobs required that she stand for a total of one hour per day, R. 67, 69, and it is unlikely that this came all at once. Thus the Secretary could find that this aggravating factor was not involved in her past relevant work.

■ Some bending was required in her past employment. Both Russell and Morris noted that Mrs. Benskin could not bend forward past 40 or 45 degrees, and Morris noted that she claimed it was too painful to bend past that point. R. 9, 98. But this does not corroborate her assertion of constant, severe back pain so strongly as to authorize us to set aside the ALJ's finding; it does little more than repeat her claim of severe pain when she bends forward.

■ 7. The ALJ was certainly entitled to find Mrs. Benskin's failure to seek medical attention inconsistent with her complaints of pain. See *Driggins v. Bowen,* 791 F.2d 121, 124 (8th Cir.1986). The measures she undertook to relieve her pain, hot showers and doses of Advil and aspirin, do not indicate that her pain was so severe as to be disabling. Although lack of financial resources may in some cases justify the failure to seek medical attention, see *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir. 1984),[1] this is not the case here. Mrs. Benskin testified only that office visits,

which cost $80 apiece, are beyond her resources. R. 28. She did not testify that financial concerns deterred her from seeking less costly medical attention, such as obtaining a prescription for pain medication, or advice on an exercise program, from her doctor over the phone. R. 35. In addition, she admitted that she had a back brace and orthopedic pillows after her second operation, and her failure to use these to treat her pain cannot be explained by an inability to pay for them. The Secretary could properly consider claimant's failure to seek professional relief for her pain as inconsistent with her account of its severity.

8. The medical evidence does not indisputably show that Mrs. Benskin's range of motion is "severely limited." Although each of the physicians has noted that she has some limits on her range of motion, those limits are (1) an inability to bend forward at the waist more than 40 to 45 degrees, (2) tightness in her legs when they are raised to the level of 90 degrees, and (3) no ankle jerk in response to a reflex test of the deep tendon in the knee. R. 9, 90, 98. Even if it were not disputed whether these are "severe" limitations, the question with respect to these functional restrictions is whether they are consistent or inconsistent with the claimant's allegation of disabling pain; in this case they do not clearly point in either direction on that issue.

■ 9. The ALJ's statement to Mrs. Benskin, "Obviously, you're still in a lot of pain, aren't you?," cannot be read literally, as a recognition of the severity of her pain. Nor can it be binding as some kind of admission or estoppel against the Secretary. We have quoted the passage of the

---

1. We are not convinced that lack of means to pay for medical services should *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations such as the one before us. In *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir.1984), we found such an inability to pay to be justifiable cause for not seeking to treat a condition, but that was in the context of a regulation, 20 C.F.R. § 404.1518 (1980), which barred a claimant from benefits if the disability resulted from a condition that could have been remedied by treatment, even if the claimant was otherwise entitled to benefits. That regulation was a dis-

qualification provision that was entirely independent of the initial disability determination. In this case, by contrast, the issue is whether the claimant is in fact disabled, and whether she has sought medical attention is directly relevant to the issue of the credibility of her complaints of disabling pain. In this context, we have suggested that *Tome* might not apply. *Brown v. Heckler,* 767 F.2d 451, 453 n. 2 (8th Cir.1986). Furthermore, claimant's financial condition and real motivation for not seeking medical help are questions of fact that are for the ALJ to decide in the first instance.

record containing this remark *supra*, at 880–881. Taken in context, this statement was a rhetorical question designed to highlight the irony that, despite Mrs. Benskin's allegations of constant, disabling pain, she had made no effort to seek professional attention in almost three years. Its place in the sequence of the examination, and the appending of the question "Aren't you?" indicate that the ALJ was cross-examining the claimant. This is a very common practice among lawyers, and one cannot infer from such statements that the examiner means or believes what he says. Indeed, he often does not.

## IV.

This review has demonstrated that substantial evidence in the record is inconsistent with the claimant's allegation of constant, disabling pain. The Secretary noted that Mrs. Benskin had not sought medical relief for her pain and did not appear to be in discomfort before the ALJ at the hearing or before Morris during the consultative examination. This was a sufficient basis on which to discount the claimant's subjective complaints, and, once those complaints are discounted, there is substantial evidence in the record to support the Secretary's conclusion that Mrs. Benskin can perform her past relevant work.[2] Since we have determined that substantial evidence in the record supports the Secretary's determination, our review must end.

The judgment of the District Court is reversed, and the cause remanded with instructions to grant the Secretary's motion for summary judgment and dismiss the complaint with prejudice.

It is so ordered.

---

**2.** Our disposition does not require that we consider whether the District Court's relief was appropriate. Usually, when the Secretary errs at a stage in the determination at which the burden is still on the claimant to prove she is entitled to benefits, the proper relief is to remand to the Secretary so he can resume consideration of the claim.