Brenda JEFFERY, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.

No. 87–1826.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 28, 1988.
Decided June 24, 1988.

Frederick S. Spencer, Mountain Home, Ark., for appellant.

Karen J. Sharp, Dallas, Tex. and Wendy J. Miller, Baltimore, Md., for appellee.

Before HEANEY, BOWMAN and BEAM, Circuit Judges.

HEANEY, Circuit Judge.

Brenda Jeffery appeals from the district court's order affirming the decision of the Secretary of Health and Human Services (Secretary) denying her application for disability benefits and supplemental security income (SSI) under 42 U.S.C. §§ 416(i), 423, and 1382(c). For reversal, Jeffery argues that the Secretary's decision was not supported by substantial evidence because the Administrative Law Judge (ALJ) improperly evaluated Jeffery's subjective complaints of pain and improperly concluded that Jeffery could return to her past work.[1] For the reasons discussed below, we reverse and remand to the Secretary with directions to enter an award for Jeffery.

Jeffery filed an application for disability and SSI benefits on November 5, 1984, alleging disability commencing on June 14, 1984, due to a lower back injury and pulled hernia sustained at work on that day. The Social Security Administration (SSA) denied her applications both initially and on reconsideration. At her request, a hearing was held before an ALJ on August 8, 1985.

At the time of the hearing, Jeffery was forty years old. She had a ninth-grade education, and had worked as a cutter in a shirt factory, an inspector in a poultry plant, an assembly-line worker, a sewing-machine operator, and a custodian.

Jeffery testified that she suffers from constant, severe low-back pain which radiates into her legs, and that the pain is relieved slightly by the various prescribed and over-the-counter medications, but her only significant relief comes from lying on the floor with her feet propped up against the wall. As a result of the pain, she is

---

1. Jeffery also argues that the ALJ erred in concluding that she did not meet the listing for musculo-skeletal disabilities, and in ignoring uncontroverted medical evidence of a disabling psychological impairment. We have reviewed these claims and find them to be without merit.

unable to stand or walk for more than fifteen to twenty minutes, or sit for more than thirty minutes. After riding in a car in a reclined position for twenty-five to thirty miles, the pain becomes unbearable, and after traveling to the hearing in a reclined position, her back had begun to cause her extreme pain. She cannot bend over but must squat to pick things up and requires the aid of a chair to stand up. She further testified that even with the medication, she sleeps only about five hours a night, and awakes feeling sluggish and drugged. Her daily activities are restricted to occasional light housework, and her children do most of the housework and grocery shopping. Jeffery also testified that one evening she "loaded up" on pain pills and alcohol before going dancing. Jeffery's parents, son, daughter, and a friend corroborated her testimony regarding her pain and restricted activities.

Medical evidence included reports submitted by several treating and consulting physicians. Dr. Beard, who treated Jeffery for back injuries on two prior occasions in 1982 and 1983, examined her on the day of her accident and diagnosed possible recurrence of a right inguinal hernia, prescribed Emperin #3 to relieve her pain, and advised her to apply local heat to the painful area. When she returned four days later, complaining of continued back pain and additional leg pains, he referred her to an orthopedist for further evaluation.

The next day Jeffery underwent an orthopedic examination by Dr. Ledbetter who diagnosed a disc injury at L4–5 or acute back strain, and hospitalized her for a week during which time she underwent conservative therapy. Lumbar spine x-rays and a CAT scan showed no significant abnormalities. Darvocet–N 100 and Soma were prescribed for her continued complaints of pain. At the time of discharge she was diagnosed as having degenerative disc disease.

Approximately one month later Jeffery was examined by another doctor who reported that she continued to suffer from decreased range of motion in her back with accompanying pain. He recommended continued bed rest and moderate exercise. She was rehospitalized for ten days and prescribed bed rest, pelvic traction, analgesics and muscle relaxants, and was diagnosed as having a low back strain with left-sided sciatica.

Approximately one month later, Jeffery saw Dr. Peeples who examined her and concluded that the medical findings were consistent with a lumbar strain but that her complaints of severe and continuous pain were exaggerated. Accordingly, he recommended she take a Minnesota Multiphasic Personality Inventory Test (MMPI) to determine if there was documental evidence of a psychological cause for her continued discomfort. The results of the MMPI profile revealed nothing of a purely psychopathological nature. Dr. Peeples noted her continued limitation in movement, and her chronic pain and prescribed the use of a TENS unit to alleviate the pain. Although the unit did provide some relief Jeffery remained in continuous pain and unable to engage in prolonged activity.

On February 19, 1985, Jeffery was examined by Dr. Vidoloff who noted that she walked with a left-sided limp and diminished knee and ankle jerks. Her lumbosacral spine, left gluteus, and left sciatic notch were tender to the touch and a visible palpable spasm was present. Considering her decreased movement and flexibility, and accounting for her pain, Dr. Vidoloff rated Jeffery as having a twenty-five percent permanent partial impairment.

Several state disability medical advisors reviewed Jeffery's medical reports and concluded that she could lift twenty-five pounds frequently, fifty pounds occasionally, had the residual functional capacity to perform her past work as a chicken inspector, and that her ability to sit, stand, or walk was not significantly restricted.

A vocational expert appeared on behalf of the Secretary and described Jeffery's past work as ranging from unskilled to skilled, and light to heavy. He testified that if Jeffery were impaired, in pain, and physically restricted as she claimed, and if her pain could be "somewhat" relieved by mostly over-the-counter medication, she

would not be able to perform any of her former jobs. Moreover, he could think of no jobs in the regional or national economy Jeffery could perform. The expert testified that if Jeffery could relieve her painful conditions by medication which was not in itself disabling, she would be able to perform nearly all of her former work.

Based on this evidence, the ALJ found that the medical evidence established a severe lumbosacral strain with degenerative disc disease, but that Jeffery did not have a listed impairment or combination of impairments. He also found that she had the residual functional capacity to engage in light work activity. He discounted her allegations of pain as being not fully credible in light of the total evidence of record, noting that her testimony as to her activities was not consistent with the activities of an individual experiencing severe, intractable pain. Because he found that Jeffery had the residual functional capacity necessary to perform her past relevant work as a poultry inspector or assembly-line worker, he concluded she was not disabled. The Appeals Council affirmed the decision. The district court summarily affirmed, finding the decision to be supported by substantial evidence. We disagree.

Judicial review of disability determinations is limited to assessing whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g) (Supp. III 1985); *Bogard v. Heckler,* 763 F.2d 361, 362–63 (8th Cir. 1985). This review requires more than a search for the existence of substantial evidence supporting the Secretary's decision, but rather must take into account evidence which fairly detracts from its weight. *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir. 1987).

■ Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence. *See Hardin v. Heckler,* 795 F.2d 674, 676 (8th Cir.1986). In *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted), this court set out the factors to be considered in evaluating a claimant's subjective allegations of pain. The ALJ must decide if the claimant's complaints of pain are consistent with his or her prior work record and the observations of third parties and examining physicians regarding (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 1322.

■ Although the ALJ may discount the subjective complaints of pain if there are inconsistencies in the evidence as a whole, he may not do so solely because the complaints are not fully supported by the objective medical evidence. *Id.* Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints. *See Douthit v. Bowen,* 821 F.2d 508, 509 (8th Cir.1987). Finally, it is not enough for the record to contain inconsistencies in the evidence; the Secretary must demonstrate that he evaluated the evidence. *See id.*

Here, the ALJ did not identify any specific piece of evidence that would discredit Jeffery's complaints of pain, nor has our careful review of the record revealed sufficient evidence to discount her complaints. Dr. Peeples's belief that Jeffery was exaggerating her pain must be read in the context of his continued treatment. The medical reports indicate that although Dr. Peeples initially suspected some psychological explanation for Jeffery's continued complaints of pain, he appeared satisfied with the MMPI profile which revealed no functional overlay.

Although Jeffery testified to doing some light housekeeping, the overwhelming testimony indicated that she attempted these activities only occasionally and with great difficulty. This was corroborated by the testimony of her children and written statements by her friends and parents. Although there was testimony that Jeffery had once gone dancing since her accident, neither the ALJ nor the Secretary refers to this incident, and considering the conditions under which this activity was attempted, we do not find it dispositive.

Moreover, although a claimant's allegations of pain may be discredited by evidence that she relies on only mild pain medication or takes stronger medication only occasionally, *see Williams v. Bowen,* 790 F.2d 713, 715 (8th Cir.1986), the record contains an adequate explanation of Jeffery's preference for Anacin and Tylenol. Immediately after the injury occurred, Jeffery testified to taking two Darvocets and one Soma every three hours for the pain. When the Darvocet ran out she testified that she could not afford to buy more and switched to a less expensive painkiller, Norgesic Forte. She took two of these every four hours and testified that they were not as effective as the Darvocet and caused her dizziness. She also testified that even while taking the prescription medication the pain would become unbearable and she would be forced to lie in bed for a week. Even with the medication she was only sleeping five hours a night and awaking feeling sluggish and drugged. She testified to her growing fear of addiction and her increased reliance on the drugs, and her belief that the prescription medications were not appreciably more effective in relieving her pain than the over-the-counter painkillers. Currently, Jeffery testified she takes two aspirins a day, one Soma, and one extra-strength Tylenol as often as every four hours.

Finally, the Secretary's reliance on this court's holding in *Benskin v. Bowen,* 830 F.2d 878 (8th Cir.1987), is misplaced. In discrediting Benskin's allegations of pain, the ALJ, as required by *Polaski,* identified specific pieces of contradictory or inconsistent evidence, such as medical progress notes indicating minimal pain, lack of prescription medications, and no visible signs of distress or discomfort during the hearing. *See id.* at 881–82. The ALJ in the present case simply did not rely on specific evidence in discrediting Jeffery's testimony and therefore did not comply with *Polaski.* Moreover, unlike Jeffery, Benskin testified to working four days a week for six months after her injury, to suffering little discomfort when seated, and to sleeping soundly with the aid of medication.

Accordingly, the ALJ's discrediting of Jeffery's allegations of disabling pain is not supported by substantial evidence, and the ALJ's conclusion that Jeffery could perform her past relevant work was improper. Where the Secretary has erroneously found that a claimant can return to her prior work, remand for further proceedings is generally appropriate. *See Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987). However, because the record overwhelmingly supports a finding of disability, a remand is not necessary. *See Beeler v. Bowen,* 833 F.2d 124, 127–28 (8th Cir.1987).

As noted above, the vocational expert testified that if Jeffery's descriptions of pain were credible, and could be "somewhat" relieved by rest, and over-the-counter medication, she would be unable to perform any of her past work or any jobs in the regional or national economy. Because the record supports a finding that Jeffery's medication is not effective in relieving her pain, the record as a whole supports Jeffery's claim of disability.

BOWMAN, Circuit Judge, dissenting.

Because I believe that Jeffery's allegation that the ALJ improperly evaluated her subjective complaints of disabling pain is without merit, I respectfully dissent. The questions for federal courts to consider in this kind of case are (1) whether the Secretary considered all of the evidence relevant to claimant's complaints of pain, and (2) whether the evidence contradicted her account, so that the Secretary could discount her testimony for lack of credibility. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir. 1987). In answering these questions, we are governed by the general principle that credibility findings in the first instance are for the ALJ. *See Smith v. Heckler,* 760 F.2d 184, 187 (8th Cir.1985).

Under *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984), the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, as well as to observations by third parties and treating and examining physicians on such matters as: (1) the claimant's daily activities; (2) the duration, frequency and inten-

**1134**

sity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. The record establishes that in the present case the ALJ duly considered these factors.

Further, substantial evidence in the record is inconsistent with Jeffery's allegations of constant, disabling pain. The ALJ noted several inconsistencies, and I agree that there is a sufficient basis upon which to discount Jeffery's subjective complaints. Although we may have decided the issue differently in the first instance, our function is limited to determining whether substantial evidence in the record supports the Secretary's determination. *See Benskin*, 830 F.2d at 885. I therefore would affirm the decision of the District Court.

Even assuming that the ALJ's methodology somehow fell short of meeting the *Polaski* standards, the proper remedy would be to remand the case to the Secretary for further administrative proceedings under the correct legal standards. In the present case, such a remand would afford the ALJ an opportunity, *inter alia*, more fully to articulate his reasons for discrediting Jeffery's testimony. I do not agree with the Court's conclusion that "the record overwhelmingly supports a finding of disability," *ante* at 1133, and thus I believe that the Court errs in bypassing the administrative process and ordering the Secretary to enter an award for Jeffery.