**Henry HALL, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 1:93CV128SNL.

United States District Court, E.D. Missouri, Southeastern Division.

Oct. 26, 1994.

Nancy R. Mogab, Mogab and Mogab, St. Louis, MO, for plaintiff.

Edwin B. Brzezinski, Sr., Asst. U.S. Atty., St. Louis, MO, for defendant.

## ORDER

LIMBAUGH, District Judge.

Having considered the plaintiff's objections to the United States Magistrate Judge's report and recommendation (# 10), filed October 3, 1994,

**IT IS HEREBY ORDERED** that the review and recommendation of United States Magistrate Judge Lewis M. Blanton (# 9), filed September 22, 1994, is **SUSTAINED, ADOPTED** and **INCORPORATED** herein.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED,** and plaintiff's motion for summary judgment is **DENIED.**

**IT IS FINALLY ORDERED, ADJUDGED and DECREED** that judgment is hereby entered in favor of defendant and against plaintiff in this cause of action.

*REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

BLANTON, United States Magistrate Judge.

This is an action under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act and for supplemental income benefits under Title XVI of the Social Security Act. Both parties have moved for summary judgment and the cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

### Procedural History

On November 18, 1991, plaintiff filed for supplemental income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and on December 23, 1991 plaintiff filed the present application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability by reason of a back injury which he states became disabling September 17, 1991. (Tr. 55–62, 101–4). Plaintiff's applications were denied initially (Tr. 50–54, 88–91) and on reconsideration. (Tr. 46–49, 74–77). Plaintiff requested a hearing which was held on August 20, 1992, before Administrative Law Judge (ALJ) James E. Darst. (Tr. 23–45). The ALJ determined that plaintiff was not under a disability at any time on or before the date of the decision. (Tr. 11–18). The Appeals Council denied review of the ALJ's determination. (Tr. 2–3). Thus, the decision of the ALJ stands as the final determination of the Secretary.

### Evidence Before the ALJ

Plaintiff was present at the hearing and was represented by counsel. At the time of the hearing, plaintiff was forty years of age, measured five feet ten inches, weighed two hundred and ten pounds and had a high school education. Plaintiff is married and has four children, ages eight through twenty. (Tr. 25–26). Plaintiff testified that he had worked at Brown Shoe company as a dock worker from August of 1981 through September of 1991. Plaintiff's job consisted of operating a forklift, unloading and loading trucks and lifting various items. Plaintiff testified that he lifted fifty pounds on a regular basis (Tr. 27). Plaintiff worked as a feeder checker from 1979 through 1981 for a company that made milk cartons. Plaintiff testified that his job involved a lot of standing, twisting and bending. (Tr. 28). From 1976 through 1979 plaintiff worked at Burkart as a laborer baling and stacking foam. (Tr. 29).

Mr. Hall indicated that he was involved in a car accident in 1990 and injured his neck and back. Plaintiff was hospitalized and treated with traction and physical therapy. Plaintiff testified that he was off work for five or six months. Mr. Hall asserted that when he returned to work he went back to his regular job and was pain free. (Tr. 31). Mr. Hall worked until September 17, 1991 when he reinjured his back. (Tr. 31). Plaintiff was treated by a Dr. Holder who prescribed Motrin and physical therapy. (Tr. 31–32). Plaintiff asserted that he was then treated by a Dr. Johnston who took x-rays and indicated that there was nothing that could be done. (Tr. 32). Mr. Hall testified that Dr. Johnston told him he had a degenerative disease in his back. (Tr. 33).

Plaintiff asserted that Dr. Johnston released him with a thirty or thirty-five pound weight restriction. Plaintiff complained that he told Dr. Johnston that it was unrealistic and he could not lift that kind of weight, but he did not have any choice. Plaintiff tried to return to work at Brown Shoe Company, but he was told that they did not have anything for him to do. (Tr. 33). Plaintiff testified that his worker's compensation claim was still pending. (Tr. 34).

Plaintiff complained that he has constant pain in the middle of his lower back. When the pain gets severe, it radiates to the right side. Plaintiff testified that he gets unbearable pain on his right side about twice a week. (Tr. 34). Plaintiff also testified that he has a little pain and numbness in his left leg. (Tr. 35). Plaintiff complained that he has pain in the lower part of his neck as well. (Tr. 35). Plaintiff maintained that he cannot twist or

bend his neck. He asserted that he can move his head from side to side a little but that he does not have a whole lot of movement in his neck. (Tr. 36). Plaintiff testified that he can only read for about five or ten minutes before the pain in his neck gets too bad. Mr. Hall asserted that the pain in his neck radiates into his left arm. (Tr. 36). Plaintiff is right-handed. (Tr. 37). Plaintiff complained that the he has only a little pain in his left arm and hand. Mostly, he experiences numbness. He further asserted that sometimes his shoulders ache as well. (Tr. 37). Plaintiff takes Tylenol, Advil, and sometimes Anacin. Plaintiff also uses Heat or Absorbine Junior. Plaintiff testified that he takes Tylenol every two or three hours. (Tr. 37). Mr. Hall indicated that he also takes hot showers to help relieve his pain. (Tr. 43). Plaintiff wears a lumbar brace. (Tr. 44). Plaintiff asserted that he had not been to the doctor because he did not have the money and because Dr. Johnston said there was nothing more they could do for him. Additionally, plaintiff asserted that Dr. Johnston told him all the pain medication was doing was giving him ulcers so he takes Anacin instead. (Tr. 44).

Plaintiff testified that he wakes up at about 10:00 or 11:00 in the morning. He indicated that he wakes up late because the pain keeps him up at night. (Tr. 38). Plaintiff stated that when he wakes up in the morning, his whole back is stiff. (Tr. 38). Plaintiff testified that he spends most of his day lying down because it is more comfortable than standing or sitting. He asserted that he cannot concentrate on reading or anything else because of the pain. Plaintiff testified that he elevates his leg when he lies down. (Tr. 39). Plaintiff asserted that he does not do any housework. His wife is unemployed. Plaintiff testified that he does not drive much. He drives to the drugstore which is a couple of blocks away. Mr. Hall testified that his daughter drove the 140 miles to the hearing. The drive was five hours long and they had to stop three or four times, including once so that his daughter could use the restroom. (Tr. 41).

Plaintiff testified that he is able to walk a couple of blocks. (Tr. 41). Plaintiff is able to sit about thirty minutes before experiencing pain, and then he must lie down. Plaintiff asserted that on a good day he can stand for about forty to fifty minutes. (Tr. 42).

### Medical Records

Plaintiff was seen by Robert E. Gardner, M.D. on September 11, 1990. A nerve conduction study and an EMG were normal. (Tr. 167-8). An x-ray of plaintiff's lumbar spine showed narrowing at the L5-S1 interspace and mild degenerative arthritic changes. An x-ray of the thoracic spine revealed that the vertebral bodies were well aligned and the disc spaces well maintained. No fractures were seen. An x-ray of the cervical spine showed mild straightening of the normal cervical lordosis with restriction in the range of motion on extension. (Tr. 169).

A CT scan of the cervical spine showed a prominent soft tissue density at C6-C7, which extended into the vertebral canal. It was noted that this in all likelihood represented a central disc herniation. There were milder bulging discs at C5-C6 and C4-C5. A CT scan of the lumbar spine showed a soft tissue density at L4-L5 that extended into the vertebral canal centrally and somewhat to the right and encroached upon the neural foramina. An accurate assessment at the L5-S1 level could not be obtained and an MRI was recommended. (Tr. 169).

There is a letter from Dr. Gardner dated September 14, 1990, which reflects that conservative treatment had not improved plaintiff's symptoms. Therefore, plaintiff was to be admitted on September 16, 1990 for more aggressive treatment. (Tr. 166).

Plaintiff was admitted to St. Francis Medical Center on September 16, 1990 for continued treatment of his neck and back pain. Plaintiff had injured his back in an automobile accident on August 3, 1990. Plaintiff was treated with bed rest, intermittent cervical and pelvic traction, heat and ultrasound therapy and anti-inflammatory and anti-muscle spasm medication. (Tr. 143-44). A bone scan showed minor uptake about the left patella which could have been post traumatic or due to early arthritis. (Tr. 147, 165). An MRI of the cervical spine showed a lateral

disc bulge and/or herniation to the left at C5–C6. (Tr. 148, 159). An MRI of the thoracic spine was normal. (Tr. 149, 161). The MRI of the lumbar spine revealed degenerative disc disease at L4–L5 and L5–S1 with extension of the disc material centrally to the vertebral canal without impingement upon the existing nerve roots. (Tr. 150, 162).

Dr. Gardner made the following diagnoses: post-traumatic pain, improved; apparent disc herniation at C6–C7; disc herniation at L4–L5; and elevated cholesterol. Plaintiff had complete resolution of his symptoms and he was relatively asymptomatic at discharge. Plaintiff was released on September 23, 1990 with no medications (because he could not tolerate them) and instructions on diet. (Tr. 143–44).

In a letter dated September 17, 1990, Dr. Gardner reported that plaintiff was treated for a herniated disc at C5–C6 with conservative efforts. Plaintiff had nearly complete resolution of his symptoms and was to be started on a rehabilitation program. (Tr. 158).

On December 7, 1990, Dr. Gardner noted that plaintiff had successfully completed rehabilitation and work hardening programs. Plaintiff was cleared to return to work without any restrictions. Plaintiff was taking Motrin. (Tr. 155).

On September 17, 1991, plaintiff was seen at Missouri Delta Medical Center in Sikeston, Missouri with complaints of right-sided back pain and tingling in his left arm. Plaintiff reported lifting 50 pounds while at work and then twisting, causing injury. It was noted that plaintiff had a history of back problems. (Tr. 136). Upon examination, there was mild tenderness in the paravertebral muscles of the lumbar region. The straight leg raising was negative. Deep tendon reflexes were two plus out of four in both legs. Plaintiff could walk without any obvious difficulty. (Tr. 137).

An x-ray showed a little narrowing of the L5–S1 intervertebral disc space. There was a question of narrowing of the L4–L5 interspace. Otherwise the lumbar spine was normal. (Tr. 139). Plaintiff was diagnosed with a lumbar strain and prescribed Orudis, Flexeril, Hot packs and bed rest. (Tr. 136–370).

On September 24, 1991, MRIs of both the cervical and lumbar spines were administered. The physician's impressions were of: spondylosis at C4–C5 through C6–C7 without any direct evidence of neural impingement and chronic disc disease at L4–L5 and L5–S1 with central bulging of the intervertebral discs, with a suggestion of impingement on the descending L5 nerve root bilaterally. There was no other evidence of neural impingement. It was noted that the study was performed in the supine position and that increased axial loading with plaintiff in an upright position could result in worsening of the disc bulging and neural impingement which were not evident in the study. (Tr. 187).

In a letter dated November 19, 1991, Barrett K. Holder, M.D., of Orthopedic Associates, Inc. in St. Louis, Missouri, advised the Brown Shoe company that rehabilitation was warranted and physical therapy would be continued. Plaintiff was not to work until further notice. Plaintiff was to continue to take his Motrin several times a day. Neurologically, plaintiff was normal. Plaintiff was to return in four weeks, at which time they would discuss possible return to work and other occupational possibilities. (Tr. 178).

In a letter dated December 10, 1991, Dr. Holder informed plaintiff that is was impossible to predict plaintiff's future work status. Dr. Holder noted that plaintiff had had several episodes of back injury while working for Brown Shoe Company. He instructed plaintiff to use caution before being employed in an occupation that involved repeated stooping, bending and heavy lifting. It was noted that as of his last office visit of November 19, 1991, plaintiff was still under the care of a physician for his back complaint. (Tr. 175).

In a letter to the Brown Shoe Company dated December 10, 1991, Richard Johnston, M.D. of the Orthopedic Associates Inc., in St. Louis, Missouri noted that plaintiff had narrowing of the L4–L5 and L5–S1 disc spaces, indicative of a pre-existing degenerative disease. It was further noted that an MRI from the Missouri Delta Medical Center

showed spondylosis with chronic disc disease at the L4–L5 and L5–S1 levels with minimal bulging. Dr. Johnston reported that plaintiff had undergone conservative treatment consisting of Nonsteroidal anti-inflammatory agents and physical therapy with unsatisfactory results. Plaintiff continued to have lower back pain which precluded strenuous physical activity. (Tr. 176). Dr. Johnston indicated that upon examination, plaintiff had diffuse areas of tenderness to deep palpation in the paraspinous musculature of the lumbosacral junction. Plaintiff had decreased forward flexion at 50%. He also had extreme pain with extension and lateral bending. Plaintiff could stand on heels and toes without difficulty. (Tr. 176).

Dr. Johnston felt plaintiff had reached maximum medical improvement. He believed that plaintiff would not be able to return to a job requiring lifting over thirty-five pounds. Dr. Johnston had no further treatment to offer and recommended plaintiff wear a lumbosacral corset. He did not feel plaintiff was a candidate for surgery. Plaintiff's pain was localized and nonradicular, so Dr. Johnston did not feel any further work-up with a myelogram or CT scan was indicated. (Tr. 176).

On May 13, 1992, plaintiff was evaluated by Eugene R. Adelmann, M.D., at the request of plaintiff's attorney. Plaintiff reported being unable to help his wife do household chores such as mopping the floor or carrying groceries. Plaintiff reported that his children did most of the yard work and the heavier cleaning around the house. Plaintiff claimed that he used to enjoy playing basketball, baseball and riding his motorcycle, but claimed that he was no longer able to pursue these hobbies and sports. (Tr. 188). Dr. Adelmann reviewed plaintiff's medical records [1]. (Tr. 189–92). Plaintiff complained that he hurt all the time. Plaintiff reported being unable to sit for more than thirty to forty minutes or to stand for more than forty-five to sixty minutes. Plaintiff reported difficulty walking for more than one or two blocks. Plaintiff further complained of some difficulty dressing himself. Mr. Hall also reported tingling down his left arm. He had no particular leg discomfort. Plaintiff had been taking Ibuprofen (800 mgs) as prescribed by Dr. Holden, but did not get the prescription renewed when it ran out. Plaintiff did not find over-the-counter analgesics helpful. (Tr. 190).

Dr. Adelmann noted that the upon examination, plaintiff had limited neck extension to twenty degrees. Lateral rotation of the neck was limited to forty-five degrees to the left and sixty degrees to the right. There was tenderness to palpation over the left trapezius muscle. The left forearm circumference was approximately one-half centimeter less than the right. (Tr. 194). Plaintiff could voluntarily forward flex to 40 degrees. Plaintiff's lumbar back extension was virtually nil. Lateral flexion of the back was limited to ten degrees in either direction. There was tenderness to palpation over the L3–L4 spinous processes. There was terminal resistance on straight leg raising bilaterally. Dr. Adelmann reported that the left biceps jerk was hypoactive when compared to the right. There was mild triceps weakness and some mild finger extension weakness on the left. Dr. Adelmann indicated that there was blunting to pinprick involving the first, second, and third fingers of the left hand. (Tr. 195). Dr. Adelmann noted that plaintiff tended to walk with a list to the right in a somewhat bent over position. There was subjective discomfort when plaintiff rolled over and got off the exam table. (Tr. 195).

Dr. Adelmann estimated plaintiff's permanent partial disability at twenty five percent of the whole person. He felt plaintiff was not employable as a manual laborer, dock worker, or fork lift operator. Dr. Adelmann indicated that plaintiff would require continued medical management with treatments of intermittent physical therapy, analgesics and muscle relaxers. Whether plaintiff would require surgery for his cervical spondylosis was indeterminate at that time. (Tr. 195).

1. There are references to physical therapy notes which were not included in the transcript of this proceeding. (Tr. 190).

### The ALJ's Determination

The ALJ determined that plaintiff met the disability insured status requirements of the Social Security Act on September 17, 1991, the date plaintiff alleged he became unable to work, and will continue to meet them through December 1995. The ALJ determined that plaintiff had not engaged in substantial gainful activity since September 1991. The ALJ noted that the medical evidence established that the plaintiff has mild degenerative arthritis of the left knee, cervical spondylosis with left cervical radiculopathies at C5, C6 and C7, and degenerative lumbar disc disease with central disc bulging at L5–S1, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

The ALJ found that plaintiff's complaints of disabling pain were not credible. The ALJ noted that plaintiff visits friends, relatives and neighbors two to three times a week. The ALJ also pointed out that plaintiff drives a car. Further, the ALJ found that no physician has ever told plaintiff that he is restricted from sedentary work, only that he is unable to engage in manual labor. The ALJ noted that the evidence indicated that plaintiff's discomfort would be precipitated by physical activity greater than that demanded by sedentary work. Finally, the ALJ noted that plaintiff only takes over-the-counter analgesics for discomfort.

The ALJ determined that plaintiff can perform work that does not involve prolonged standing or walking, more than occasional bending or lifting more than ten pounds. The ALJ found that plaintiff was unable to perform his past relevant work as a laborer, dock worker, feeder checker or forklift operator. He found that plaintiff has the residual functional capacity to perform the full range of sedentary work. Based upon plaintiff's age and residual functional capacity, the ALJ found the issue of transferability of skills not material. Using § 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rules 201.27, 201.28, or 201.29, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, and considering plaintiff's residual functional capacity, age, education, and work experience, the ALJ concluded that plaintiff was not under a disability at any time through the date of the decision.

### Discussion

Plaintiff asserts that the ALJ's decision that plaintiff is not disabled is not supported by substantial evidence on the record as a whole. Specifically, plaintiff asserts that the ALJ erred in assessing plaintiff's credibility and in using the Medical Vocational Guidelines to conclude that plaintiff can do other work. Defendant, on the other hand, argues that the ALJ's decision is supported by substantial evidence on the record as a whole.

The undersigned concludes that the ALJ's opinion is supported by substantial evidence on the record as a whole.

### I. Generally

■ The Secretary has established a five-step evaluation procedure for determining disability within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. New York*, 476 U.S. 467, 470–71, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986); *Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir.1994). The court's review of the Secretary's decision to deny benefits is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Neely v. Shalala*, 997 F.2d 437, 439 (8th Cir.1993). Substantial evidence is evidence which reasonable minds would accept as true and adequate to support the Secretary's conclusion. *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir.1992). The court will not reverse a decision simply because substantial evidence may support the opposite conclusion. *Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir.1992). As part of the court's analysis, the undersigned "must take into account that evidence in the record which 'fairly detracts from the weight of the evidence supporting the ALJ's decision' and apply a balancing test to all of the evidence." *Loving v. Department of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir.1994).

### II. Credibility Determination

■ The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that she has a disabling impairment. *Roach v. Sullivan*, 758 F.Supp. 1301, 1306 (E.D.Mo.1991); *Russell v. Secretary, Dept. of Health, Education & Welfare*, 402 F.Supp. 613, 618 (E.D.Mo.1975), *aff'd*, 540 F.2d 353 (8th Cir.1976).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). When evaluating evidence of pain, the Secretary must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness and side effects of any medication; and

(5) the claimant's functional restrictions.

*Baker v. Sec. of HHS*, 955 F.2d 552, 555 (8th Cir.1992); *Polaski*, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating plaintiff's credibility. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, and plaintiff's appearance and demeanor at the hearing. *Polaski*, 739 F.2d at 1322; *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir.1989).

In evaluating the evidence of nonexertional impairments, the ALJ is not free to ignore the testimony of the plaintiff "even if it is uncorroborated by objective medical evidence." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984); *Warner v. Heckler*, 722 F.2d 428, 431–32 (8th Cir.1983). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *Millbrook. v. Heckler*, 780 F.2d 1371, 1373 (8th Cir. 1985), *cert. denied*, —— U.S. ——, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992) (citing *Johnson v. Heckler*, 744 F.2d 1333, 1338 (8th Cir. 1984)).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject plaintiff's complaints. *Ricketts v. Secretary of Health & Human Services*, 902 F.2d 661, 664 (8th Cir.1990); *Jeffery v. Secretary of Health & Human Services*, 849 F.2d 1129, 1132 (8th Cir.1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. *Id.; Butler v. Secretary of Health & Human Services*, 850 F.2d 425, 426 (8th Cir.1988). Although credibility determinations are in the first instance for the ALJ and not the court, the ALJ's credibility assessment must be based upon substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988); *Millbrook v. Heckler*, 780 F.2d 1371, 1374 (8th Cir.1985).

When, as here, a plaintiff claims that the Secretary failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the Secretary considered all of the evidence relevant to plaintiff's complaints of pain under the *Polaski* standards and whether the evidence so contradicts plaintiff's subjective complaints that the Secretary could discount his testimony as not credible. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

The ALJ noted that plaintiff's treating physician did not find plaintiff to be restricted from sedentary work. In fact, Dr. Holder advised plaintiff to use caution before being employed in an occupation that involved repeated stooping, bending and heavy lifting. (Tr. 175). Further, Dr. Johnston, Dr. Holder's associate, stated on December 10, 1991 that plaintiff would not be able to do any job requiring lifting over thirty-five pounds. (Tr. 176). The treating physician's opinion concerning a plaintiff's physical limitations is entitled to substantial weight. *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir.1993).

Accordingly, the ALJ was justified in relying on the opinion of plaintiff's treating physicians in evaluating his physical limitations.

█ Plaintiff argues that the ALJ failed to acknowledge that plaintiff was seen only by worker's compensation physicians and that the ALJ failed to acknowledge that one of the worker's compensation doctors had placed a permanent lifting restriction on plaintiff. Despite the fact that they were worker's compensation physicians, Dr. Holder and Dr. Johnston were plaintiff's treating physicians. "The treating physician rule is premised, at least in part, on the notion that 'the treating physician is usually more familiar with a claimant's medical condition that are other physicians.'" *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991) (quoting *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir. 1986)). Further, Dr. Adelmann, a consulting physician selected by plaintiff himself, rated plaintiff's disability as only 25% of the whole person. Dr. Adelmann only found that plaintiff was not employable as a manual laborer, dock worker, or fork lift operator. (Tr. 195).

Further, the weight restriction alluded to by plaintiff which was imposed by Dr. Johnston, was thirty-five pounds. The ALJ found plaintiff capable of doing sedentary work. Sedentary work only "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

It is further noted that the record reflects that plaintiff did not quit work because he was unable to perform work duties. Plaintiff testified that he attempted to return to work at the Brown Shoe Company, but was told that there was nothing for him. This factor could be seen as inconsistent with plaintiff's complaints.

Plaintiff argues that the ALJ did not attempt to compare the medical evidence to plaintiff's complaints. Plaintiff asserts that he testified to constant low back pain that sometimes radiates into the right side of his back and pain, constant numbness and tin-

gling in both lower extremities, the left being greater than the right. First of all, it should be noted that plaintiff testified that he gets severe pain radiating to the right side twice a week. Further, he testified that he had a "little pain" and a "little numbness" in his left leg.

It is further interesting to note that while objective evidence shows that plaintiff has spondylosis at C4–C7 without evidence of any direct neural impingement and chronic disc disease at L4–L5 and L5–S1 with a suggestion of impingement on the nerve root at L5, objective tests performed in 1990 showed essentially the same restrictions. As defendant points out, plaintiff returned to dock work for some nine or so months after Dr. Gardner released him in December of 1990 to return to work without any restrictions.[2] Further, plaintiff's physicians in 1991 determined that the pain was nonradicular.

█ The ALJ noted that plaintiff is able to drive and visit friends, relatives and neighbors two or three times a week (Tr. 122). Plaintiff complains that the ALJ is not being fair in his recitation of plaintiff's testimony. Plaintiff asserts that he does not drive much and that he only drives to the drug store a few blocks away. Further, he asserts that he testified at the hearing that they had to repeatedly stop on the way to the hearing because of his pain. Plaintiff correctly asserts that his daily activities show little activity. However, the ALJ is not obligated to believe every detail of plaintiff's version of his daily activities. *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987) (the claimant in *Benskin* contended that she must lie in a fetal position for four hours of the day). Further, the ALJ may disbelieve plaintiff's allegations of disabling pain if there are inconsistencies on the record as a whole. *Millbrook v. Heckler,* 780 F.2d 1371, 1373 (8th Cir.1985), *cert. denied,* — U.S. ——, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992) (citing *Johnson v. Heckler,* 744 F.2d 1333, 1338 (8th Cir.1984)).

█ Finally, the ALJ noted that plaintiff only takes over-the-counter pain

---

**2.** Although plaintiff complained on one of his disability reports that he was disabled because of back pain and hemorrhoids, there no evidence that plaintiff's hemorrhoids would affect his ability to perform work related activities. (Tr. 134–35).

medication. A plaintiff's allegations of disabling pain may be discredited by evidence that the plaintiff has received minimal medical treatment or had taken pain medication only occasionally. *Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir.1986). Plaintiff argues that he is unable to see the doctor or take medication because his worker's compensation carrier terminated his medical treatment. If a plaintiff is unable to follow certain prescribed treatments and medications due to financial hardship, that hardship may be taken into account. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir.1992); *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir.1984). However, financial hardship is not determinative and the ALJ may consider the failure to seek medical attention in determining credibility. *Benskin v. Bowen*, 830 F.2d 878, 884, n. 1 (8th Cir.1987).

As in *Murphy*, there is no evidence that plaintiff attempted to seek low cost medical care or was denied treatment. *See, Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir.1992).

 Plaintiff argues that the ALJ failed to consider plaintiff's work record in his credibility evaluation. The ALJ acknowledged that plaintiff had a steady work record; however, the ALJ found that a preponderance of the evidence did not indicate an impairment or combination of impairments that would prevent plaintiff from performing sedentary work.

In sum, substantial evidence on the record as a whole supports the ALJ's determination that plaintiff can do the full range of sedentary work.

### III. Use of the GRIDs

Plaintiff asserts that the ALJ erred in using the GRIDs to satisfy the Secretary's burden of proving that there are other jobs plaintiff can perform. Specifically, plaintiff asserts that he experiences pain and is unable to sit for more than thirty minutes because of pain. Plaintiff points out that he had to stand during the hearing. (Tr. 38). Further, plaintiff points out that Dr. Holder found that it was impossible to predict plaintiff's future work status and that plaintiff should exercise caution before being employed in any occupation that included repeated bending, stooping, or lifting.

"As is true in many disability cases, there is no doubt that the claimant is experiencing the pain; the real issue is how severe that pain is." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991). The ALJ found that plaintiff's alleged pain limitations were not credible. He concluded that plaintiff cannot perform prolonged standing or walking, more than occasional bending, or lift more than ten pounds. In fact, Dr. Johnston, noted that plaintiff's pain would preclude "strenuous activity." (Tr. 176).

 If plaintiff's non-exertional impairments significantly affect plaintiff's residual functional capacity, the GRIDs are not controlling and may not be used to direct a conclusion of disabled or not disabled. *Thompson v. Bowen*, 850 F.2d 346, 350 (8th Cir.1988). "In this context 'significant' refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the guidelines under the demands of day-to-day life." *Id.* The Eighth Circuit has stated that, "[u]nder this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled." *Id.*

 Because the ALJ determined that plaintiff's complaints of disabling pain were not credible and do not affect his residual functional capacity to do the full range of sedentary work, the ALJ could properly rely upon the GRIDs to fulfill the burden of showing that plaintiff is capable of performing work in the national economy. *Carlock v. Sullivan*, 902 F.2d 1341, 1343 (8th Cir.1990); *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir.1989). Therefore, plaintiff's argument that the ALJ failed to use a vocational expert lacks merit.

It should also be noted that while Dr. Holder did inform plaintiff that it would be impossible to predict his future work status, in the same letter, Dr. Holder informed

plaintiff that he would caution against employment in jobs involving repeated stooping, bending, and heavy lifting. Social Security Ruling 85–15 recognizes that "[s]ome stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." 1985 WL 58657, *6–7 (S.S.A.).

In conclusion, the undersigned finds that the ALJ's decision is supported by substantial evidence on the record as a whole. *See, Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992) (a court may not reverse merely because substantial evidence would have supported the opposite decision.)

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Document # 5) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion for Summary Judgment (Document # 8) be **GRANTED.**

**IT IS FINALLY RECOMMENDED** that judgment be entered in favor of the defendant.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990).