_____

No. 95-2565
_____

Julaine Ostronski,                    *
                                      *
          Appellant,                  *
                                      *  Appeal from the United States
     v.                               *  District Court for the
                                      *  District of Minnesota.
Shirley S. Chater,                    *
Commissioner of Social Security *
Administration,                       *
                                      *
          Appellee,                   *


_____

          Submitted:  December 12, 1995

            Filed:  August 22, 1996
_____

Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,[*] District Judge.

_____

BOWMAN, Circuit Judge.


     Julaine Ostronski appeals the final order of the District Court[1]
granting summary judgment in favor of the Commissioner, thus affirming the
decision of the Social Security Administration  denying Ostronski's claim
for Social Security Disability benefits.  For reversal, Ostronski argues
the District Court erred in finding


_____

     [*]The  HONORABLE  WILLIAM  W.  SCHWARZER,  United  States
District Judge for the Northern District of California,
sitting by designation.

     [1]The Honorable Paul A. Magnuson, Chief Judge, United States
District Court for the District of Minnesota, adopting the report
and recommendation of the Honorable Raymond L. Erickson, United
States Magistrate Judge for the District of Minnesota.

that substantial evidence supports the Commissioner's denial of benefits. More specifically, Ostronski contends that the administrative law judge (ALJ) improperly determined that she (1) does not meet or equal a listed impairment under the Social Security regulations, and (2) has the residual functional capacity[2] to perform a significant number of jobs in the national economy.  For the reasons discussed below, we affirm the judgment of the District Court.

## I.

Ostronski is a forty-five-year-old woman with a high school and beauty school education.  She has worked as a beautician and an Avon sales representative.  On September 24, 1990, Ostronski filed an application for disability insurance benefits,[3] alleging a disability by reason of bilateral thoracic outlet syndrome.[4]  Her application was denied initially and on reconsideration.  Ostronski requested and was granted a hearing before an ALJ on June 13, 1991.  The ALJ denied Ostronski's application for disability benefits.  Ostronski appealed to the Appeals Council, which on September 25, 1992, remanded the case to the ALJ for the taking of additional testimony.

---

[2]A claimant's residual functional capacity is what she can still do despite her limitations.  20 C.F.R § 404.1545(a).

[3]Ostronski had previously applied for disability benefits on December 11, 1984, and January 3, 1986.  Both applications were denied.

[4]Thoracic outlet syndrome occurs when pressure on an artery, vein, or nerve root that passes into either arm from the neck causes pain in the hand, neck, shoulders, or arms. The American Medical Association Encyclopedia of Medicine 979 (Charles B. Clayman, M.D., ed., 1989).  Typically patients experience minor to moderate sensory impairment and respond to treatment through physical therapy and exercise. The Merck Manual 1518 (16th ed. 1992).

The second hearing took place on January 6, 1993. The evidence before the ALJ showed that Ostronski stopped working full-time as a beautician in 1984, alleging inability to work because of difficulty in using her arms and hands. In 1984 Ostronski was diagnosed with bilateral thoracic outlet syndrome. In 1986 and 1987, using biofeedback techniques to relieve her symptoms, Ostronski returned to her work as a beautician on a part-time basis. In 1987, Ostronski terminated her work as a beautician, alleging pain and problems handling her workload. From 1990 to 1991, Ostronski sold Avon cosmetics on a part-time basis, until she terminated her employment, claiming the work had become too difficult for her. Ostronski alleges that she was disabled beginning in September 1984 and continuously through March 30, 1991, when her disability insurance status expired. Medical tests and examinations conducted by Ostronski's treating and examining physicians indicated that she could sit, stand, or walk for six hours in an eight-hour day; carry up to ten pounds frequently, and twenty-four pounds occasionally; but was restricted from those activities that required her to hold her arms outward. Ostronski's doctors had suggested surgery, which she refused.

Despite her complaints of constant pain in her arms and upper extremities, Ostronski sought no medical treatment between July 1986 and September 1988, and infrequent medical treatment from September 1988 to June 1992. Ostronski described numbness in her right arm, an occasional stiff neck, throbbing in the right hand, difficulty writing, discomfort in her upper extremities and, particularly, discomfort in her hands when sleeping. She did not seek any prescription medication to relieve her alleged disabling pain, but instead relied only on aspirin during the relevant time period. Ostronski's daily activities included taking care of her houseplants, visiting friends, walking, preparing some meals, performing light house cleaning, and watching a considerable amount of television.

On July 29, 1993, the ALJ issued a new decision, again finding that Ostronski was not disabled. Following the five-step analysis set out in 20 C.F.R. § 404.1520, the ALJ found that Ostronski had bilateral thoracic outlet syndrome. The ALJ also found, however, that her impairments did not meet or equal a listed impairment presumed to be disabling by federal regulations. While finding that Ostronski was precluded from returning to her past work as a beautician, the ALJ further found that Ostronski possessed the residual functional capacity

> to perform the physical exertion and nonexertional requirements of work except for lifting over 24 pounds occasionally and 10 pounds with more frequency, overhead reaching, forward and outward extension of the upper extremities or repetitive strenuous activity involving the upper extremities.

Decision of ALJ at 21. The ALJ posed a hypothetical question incorporating these and a few other limitations to a vocational expert, who opined that despite her limitations Ostronski could perform light-work jobs in sales and inspection. The vocational expert further testified that such jobs exist in significant numbers in the state and national economy. The ALJ discounted Ostronski's subjective complaints of pain and functional limitations as not fully credible. The ALJ found that Ostronski's medical care was limited from 1986 through 1992, her pain was controlled by aspirin, she was able to perform a variety of daily activities, and her testimony that she suffered disabling pain was inconsistent with objective clinical findings. After the Appeals Council denied review of the ALJ's decision, Ostronski sought review by the District Court. On April 22, 1995, the District Court, adopting the magistrate judge's report and recommendation, affirmed the decision to deny benefits in its grant of summary judgment in favor of the Commissioner.

Our review of an administrative decision to deny Social Security benefits is limited and is deferential to the agency.  We must affirm the administrative decision if substantial evidence in the record as a whole supports it.  Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996). "Substantial evidence is `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996) (quoting Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994).  "It is not our task, however, to review the evidence and make an independent decision.  If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits."  Mapes, 82 F.3d at 262.

**A.**

Ostronski first argues that the ALJ erred by finding that her bilateral thoracic outlet syndrome does not qualify as a listed impairment under the Social Security regulations.  We are unpersuaded.

The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment.[5]  See 20 C.F.R. § 404.1527(e);  Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992).  Based upon a review of the clinical evidence, the physicians acting on behalf of the Secretary concluded that Ostronski did not meet a listed

---

[5]"A statement by a medical source that [a claimant is] `disabled' or `unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  20 C.F.R. § 404.1527(e)(1).  The determination of whether a claimant meets the statutory definition of disability is the responsibility of the Commissioner.  Id.

impairment presumed to be disabling.  In November 1990, Dr. Robert Hammerstrom reviewed the medical evidence and concluded that Ostronski retained the ability to perform exertionally light work that did not involve sustained overhead work or repetitive or sustained neck movement. Dr. Hammerstrom opined that Ostronski's impairment would not affect her ability to perform handling, fingering, and feeling.  In January 1991, Dr. Charles Haberle reviewed the medical evidence in the record and agreed with Dr. Hammerstrom's conclusion.  The reviewing physicians' opinions provide substantial evidence to support the ALJ's finding that Ostronski's thoracic outlet syndrome did not meet any listed impairment.

The medical evaluations provided by the examining physicians are consistent with those provided by the reviewing physicians.  In April 1984, Dr. James Brueggemann, a neurologist with the Duluth Clinic and Ostronski's treating physician, examined Ostronski and determined that she had thoracic outlet syndrome.  Dr. Brueggemann found that Ostronski initially demonstrated some reduction in grip strength and hypoactive reflexes.  In June 1984, following two months of participation in a work-hardening program, Dr. Brueggemann found that Ostronski had strong grip strength, no focal weakness in her upper extremities, and no muscle atrophy.  Dr. Brueggemann recommended that Ostronski change occupations in order to avoid activities, such as cutting hair, that required her to hold up her arms for sustained periods.  In January 1985, Dr. Brueggemann opined that Ostronski was limited in her ability to work with her arms held away from her body, but that she could probably perform secretarial activities such as typing with her arms at her side.

In 1985 and 1986 Ostronski was examined by Dr. William Fleeson and Dr. D.F. Person for the purpose of an evaluation for her then pending workers' compensation claim.  Dr. Fleeson examined Ostronski and determined that her upper extremities were

essentially normal, with the exception of some diminishment in her deep tendon reflexes at the elbow and forearm. Ostronski retained normal grip strength and finger motion with ability to distinguish all American coins in both hands without looking, as well as good coordination and sensation. She exhibited full neural vascular supply, and a normal ability to engage in rapid, alternating movements. In addition, the electromyogram[6] and nerve conduction studies performed in 1985 were essentially normal, except for a "borderline" finding in the left median nerve suggestive of thoracic outlet syndrome. Dr. Fleeson concluded that Ostronski's impairment represented only a twelve percent permanent partial disability of the entire body. Dr. Person found that Ostronski retained good strength in her upper extremities, with numbness and weakness occurring only when she kept her arms in an elevated position for a period of time. Ostronski demonstrated no nerve-root disorder. Dr. Person recommended that Ostronski undergo retraining in a field where those restrictions could be accommodated and rated her as having a fifteen percent permanent partial disability of the entire body.

Where, as here, the ALJ's determination that Ostronski does not meet the listing criteria is supported by substantial evidence in the record as a whole, we will not second-guess the ALJ. Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) ("We will not reverse a decision simply because some evidence may support the opposite conclusion.")

---

[6]An electromyogram is an electrodiagnostic technique for recording the intracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. This technique helps to identify the source of muscle weakness and can be useful in determining the specific nerve or muscle that has been affected. The Merck Manual 1392 (16th ed. 1992).

**B.**

Ostronski next argues that the ALJ erred in finding that she had the residual functional capacity to perform light work. In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984). In this case, the ALJ found that Ostronski was not able to return to her past work as a beautician, but determined that she retained the capacity to perform light work. The ALJ arrived at this determination after careful review of Ostronski's medical records, Ostronski's testimony, lay witness testimony, and testimony from a vocational expert.

Light work is defined as work that "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 220.132(b). Light work also involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. Id. We conclude that the ALJ properly determined that Ostronski retains the capacity to perform light work. The medical evaluations by Drs. Brueggemann, Fleeson, and Person indicate that Ostronski could perform work that did not require: (1) prolonged or sustained extension of her arms overhead; (2) driving herself for long distances; (3) writing for longer than ten to fifteen minutes at a time; and (4) strenuous activity with either arm. Finally, Ostronski's use only of over-the-counter pain relievers, such as aspirin, suggests that the severity of her pain is not so great as to preclude light exertional type work. See Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995). Thus, the ALJ's conclusion is supported by substantial evidence.

**C.**

Ostronski argues that the ALJ improperly determined that her subjective complaints of disabling pain and functional limitations are not fully credible.  We disagree.

In discounting Ostronski's subjective complaints of pain, the ALJ considered those complaints in accordance with Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Under Polaski, the ALJ must consider the claimant's prior work history, as well as observations by third parties regarding the claimant's: (1) daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992) (listing Polaski factors).  "[T]he mere fact that working may cause pain or discomfort does not mandate a finding of disability."  Jones v. Chater, No. 95-3371, slip op. at 5 (8th Cir. June 19, 1996).  An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole.  Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).  Relevant here are the claimant's daily activities, whether she has sought treatment, her demeanor, and the objective medical evidence.

In this case, the ALJ relied upon inconsistencies in the record that detracted from the credibility of Ostronski's subjective complaints of pain and functional limitations.  After a careful review of the record as a whole, we find that it supports the ALJ's determination.  First, Ostronski's return to work as a beautician in 1986 and 1987, and her work as an Avon sales representative in 1990 and 1991, undercut her complaints that she is unable to perform any work.  Although it is true that Ostronski's daily activities demonstrate some limitations, the ALJ was not obligated to accept all of Ostronski's assertions

concerning those limitations.  See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

Second, Ostronski's complaints of disabling pain and functional limitations are inconsistent with her failure to take prescription pain medication or to seek regular medical treatment for her symptoms. Ostronski's failure to seek medical treatment between July 1986 and September 1988, and infrequent medical treatment from September 1988 to June 1992, suggest that the severity of her pain is not so great as to preclude her from performing light work.  See Wingert v. Bowen, 894 F.2d 296, 299 (8th Cir. 1990) (noting infrequent medical treatment suggests condition is not disabling).  We note that she rejected her physicians' recommendations to have surgery to reduce her pain, explaining that she would not undergo surgery unless her arms were totally non-functional. Progress Report No. 7 from Steve Aldrich, Constitution Rehabilitation Company, to Scott Langford, Travelers Insurance Co., at 2 (Feb. 6, 1985). Moreover, her reliance on aspirin during the relevant time period certainly does not suggest a disabling degree of pain.  See Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (stating lack of strong pain medication is inconsistent with subjective complaints of disabling pain); Nelson, 966 F.2d at 367 (noting use of non-prescription pain medication undercut claimant's complaints of disabling pain).

Finally, it appears that Ostronski may lack motivation to work. Steve Aldrich, Ostronski's rehabilitation consultant, who was hired to help Ostronski find work that would accomodate her physical limitations, reported in one of his vocational assessment evaluations of 1985 that Ostronski had expressed a low interest in employment.  In a subsequent rehabilitation progress report, Aldrich noted that Ostronski had expressed virtually no interest in retraining, and she stated that cosmetic sales jobs were "beneath her status."  Progress Report No. 11 from Aldrich to Langford at 1, (June 17, 1985).  In 1990 and 1991, Ostronski worked part-time as

a door-to-door salesperson for Avon cosmetics. After leaving that job, Ostronski indicated to Aldrich that she was dissatisfied with Avon sales because she did not view herself as a salesperson. These statements in the record, when viewed as a whole, raise some doubt as to Ostronski's assertion that she is unable to work due to pain and functional limitations, and at the very least point to another basis upon which the ALJ had reason to discredit Ostronski's subjective complaints.

Thus, there is substantial evidence supporting the ALJ's decision to discredit Ostronski's subjective complaints, and the ALJ properly discounted them. See Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989).

**D.**

Ostronski also complains that the ALJ failed to give adequate weight to the witness testimony offered by her mother, sister, and husband and failed to make specific findings concerning their credibility. We disagree.

The ALJ properly considered the witness testimony and refused to place controlling weight on it for acceptable reasons. The ALJ noted that Ostronski's mother, sister, and husband were not qualified to render an opinion as to Ostronski's capacity to work; their statements merely corroborated Ostronski's testimony regarding her activities; and the testimony conflicted with the medical evidence regarding Ostronski's functional capabilities. Thus, the ALJ had a solid basis for discounting Ostronski's lay witness testimony. See Brockman v. Sullivan, 987 F.2d 1344, 1347 (8th Cir. 1993). In these circumstances, the ALJ was not required to make credibility findings as to these witnesses in order to decide their testimony was not entitled to great weight. Cf. Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995) (noting arguable deficiency in ALJ's opinion does not require reviewing

-11-

court to set aside an administrative finding when the witness's testimony is discredited by same evidence that proves claimant's claims not credible).

## E.

Ostronski argues that the hypothetical question propounded by the ALJ to the vocational expert (VE) was flawed because it did not include all of Ostronski's impairments. We reject this argument. The hypothetical properly included all impairments that were supported by the record and excluded other alleged impairments that the ALJ had reason to discredit.

Once the ALJ determined that Ostronski was incapable of returning to her past work as a beautician, the burden of proof shifted to the Commissioner to establish that work existed in the national economy suitable for an individual with Ostronski's restrictions. Talbott v. Bowen, 821 F.2d 511, 514-15 (8th Cir. 1987). Here, the ALJ properly recognized the shift in the burden and called for VE testimony. We have held that the ALJ must set forth all of the claimant's disabilities when posing a hypothetical question to the VE. Greene v. Sullivan, 923 F.2d 99, 101 (8th Cir. 1991). We have recognized, however, that the ALJ need not include every physiological impairment suggested by the evidence. Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Rather, the hypothetical is sufficient if it sets forth the impairments that the ALJ has found the claimant to have. Rappoport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir. 1991).

We are satisfied that here the ALJ's hypothetical question to the VE adequately set out Ostronski's functional limitations. The ALJ not only stated that Ostronski was limited to exertionally light work that involved no overhead reaching, but also accurately described her limitations regarding forward or outward extension of the arms and repetitive strenuous activities involving her upper

extremities, and noted as well her reduced capacity for fine manipulation. The hypothetical also included the restrictions on Ostronski's ability to lift. The VE was present throughout the hearing and was well aware of all Ostronski's impairments that formed the basis for the functional limitations stated by the ALJ in the hypothetical question. See Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (rejecting claimant's argument that ALJ's hypothetical was defective because it did not include every impairment established by medical evidence where VE was present during hearing and question posed adequately set out functional limitations as found by ALJ). In response to the hypothetical, the VE stated that there were approximately 72,850 jobs in the Minnesota economy in sales and inspection that Ostronski would be able to perform. The VE testified that Ostronski would need to have the ability to use a pencil to record orders, but that the jobs identified would not require writing for more than ten to fifteen minutes at a time, and that these jobs would allow Ostronski sufficient freedom of movement to accomodate her comfort level.

**F.**

Ostronski contends that the ALJ erred in not giving controlling weight to evaluations made by Dr. Brueggemann in 1986, Dr. Irons in 1988, and Aldrich's 1992 report regarding her employability. She contends that their opinions should have been included in the hypothetical propounded to the VE. We have considered these arguments and find them to lack merit.

The ALJ had sufficient reasons for discrediting all three opinions. In November 1985, Dr. Brueggemann performed a functional capacity evaluation test on Ostronski and found that she had thoracic outlet syndrome, concluding that she could no longer work at her previous job as a beautician. Dr. Brueggemann believed, however, that she still could perform other jobs. In January 1986,

Dr. Brueggemann noted that Ostronski's physical restrictions were the same as he noted in the 1985 evaluation, but that she described an inability to drive a motor vehicle or to talk on the telephone because of numbness in her hands. As a result Dr. Brueggemann concluded: "I suppose she would not be able to return to work. I don't know about trimming fingernails and cuticles and applying nail polish." Letter from Dr. James Brueggemann to Steve Aldrich, at 1 (Jan. 9, 1986). Dr. Brueggemann's 1986 statement is theoretical in tone, inconsistent with his 1985 evaluation, and unsupported by any clinical signs or findings. The ALJ did not err in giving the 1986 opinion less than controlling weight. See Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991).

The ALJ also discounted some notes made in September 1988 by Dr. Irons, Ostronski's family physician. With respect to her thoracic outlet syndrome, Irons wrote that Ostronski "continues to be disabled." Physician's Notes by Dr. Irons (Sept. 22, 1988). Dr. Irons's opinion was not accompanied by any objective medical findings, and appears to be based solely on Ostronski's subjective complaints. Furthermore, Dr. Irons's opinion was completely inconsistent with the medical evidence in the record as a whole. Therefore, it was proper for the ALJ to give Dr. Irons's 1988 opinion less than controlling weight. Kirby, 923 F.2d at 1328.

The ALJ also properly discounted Aldrich's 1992 report. In 1986, Aldrich evaluated Ostronski and determined that she would be able to continue her past employment as a beautician on a part-time basis through the use of biofeedback. Aldrich advised Ostronski that she could increase both the number of days and the hours in each day that she could work. In 1992, Ostronski consulted Aldrich again without any intervening evaluations, and Aldrich concluded that she was disabled from all work. We agree with the ALJ that Aldrich had no apparent reason to alter his 1986 evaluation in which he concluded that Ostronski was employable: Aldrich had no professional contact with Ostronski between 1986 and 1992; and

Ostronski's physical condition remained unchanged between 1986 and 1992.

**III.**

For the foregoing reasons, we affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.